[L. A. No. 15541.   In Bank.—May 26, 1936.]

WILLIAM C. DALZELL, Petitioner, THE STATE BAR OF CALIFORNIA, Respondent.

W. C. Dalzell, *in pro. per.*, for Petitioner.

Philbrick McCoy for Respondent.

WASTE, C. J.—The State Bar of California has recommended that petitioner, a member thereof, be disbarred from the practice of the law. This recommendation, and the charges and findings upon which it is based, arose out of the following facts:

In 1918 Florence Ferguson Shoemaker died testate, leaving a life estate in her property to Samuel M. Ferguson and upon his death the property was to pass to the direct offspring of O. W. Ferguson, and if none, then equally to her nephews and cousins. Her estate was accordingly distributed. Thereafter and in 1928 the life tenant died and his wife, Henrietta Ferguson, was appointed executrix of his estate. She died approximately one year later, whereupon Evelyn Fessenden was appointed administratrix with the will annexed of the estate of the life tenant, Samuel Ferguson, and was subsequently appointed executrix of his deceased wife's estate. In 1929, and pursuant to the decree of distribution entered in the estate of Samuel Ferguson, all of the assets of that estate, including certain of the assets in which he had a life estate under the will of Florence Ferguson Shoemaker, were distributed to Evelyn Fessenden as executrix of the estate of Henrietta Ferguson.

At the time of the death of the life tenant no direct offspring of O. W. Ferguson survived who might take under the will of Florence Ferguson Shoemaker and consequently under the terms of her will the remaining assets of her estate vested in several surviving nephews and cousins. In due time all of these heirs employed petitioner to recover for their use and benefit the assets, or the proceeds thereof, distributed to the life tenant under the will of Florence Ferguson Shoemaker.

The terms of the employment were identical in each instance and are set forth in letters addressed to the petitioner, reading as follows:

"I have been advised that I have a one-eighth undivided interest in the property of Florence Ferguson Shoemaker, according to the decree of distribution in her estate, and that it will be necessary for some legal action to be taken in order to secure this interest, and I desire to employ you to take whatever legal steps may be necessary to *collect* this interest for me. I understand that the other seven beneficiaries in said estate are also retaining you.

"In case you accept this offer, I authorize you to take whatever legal steps may, in your opinion, be deemed necessary to protect and secure my interests, and agree to pay you, as your compensation for your services in this matter, 25% of the *amount recovered,* either in settlement, compro-

mise, adjustment, suit or otherwise, and authorize you to deduct this amount from the *amount of recovery.*"

Petitioner accepted the employment and entered upon an investigation to identify the assets included in the estate of Henrietta Ferguson as being the assets or proceeds of assets distributed to the life tenant in the will of Florence Ferguson Shoemaker. On behalf of his several clients petitioner thereupon brought an action against the executrix of the estate of Henrietta Ferguson for an accounting and for other relief in relation to said assets. Judgment was entered on October 23, 1930, in favor of the plaintiffs therein for $18,827.25 and the defendant Evelyn Fessenden, as executrix of the estate of Henrietta Ferguson, was directed to pay forthwith to the plaintiffs the sum of $5,724.67, representing the cash in her possession as such executrix, and was further directed to convert into cash certain other assets and to pay over to plaintiffs out of the proceeds thereof the balance of the judgment. No appeal was taken and this judgment became final. Up to this point no complaint was ever made of petitioner's services and the board of governors approved the finding of the local committee that petitioner had performed the same with diligence and skill.

On the day following the entry of the judgment in favor of petitioner's clients, the executrix of the estate of Henrietta Ferguson paid to the petitioner $4,500 in cash for the use of his clients. Petitioner did not advise his clients that he had received this sum on account of the judgment but instead entered a charge upon his records against his clients in the sum of $4,706.81, representing 25 per cent of the amount for which judgment had been entered, and applied the $4,500 received to his own use in partial payment of the fee so computed and toward an additional charge of $160 which he had entered upon his books for services in connection with his investigation incidental and preliminary to the commencement of the action above mentioned.

Thereafter and on January 7, 1931, acting on behalf of his clients, the petitioner undertook to have the executrix of the estate of Henrietta Ferguson removed. He accomplished his objective and succeeded in having himself appointed administrator of that estate, representing to the probate court that if appointed he would not claim any fee as administrator or as counsel for such administrator. He testified that this rep-

resentation was made "to induce the court to grant me the letters". However, he entered a charge of $150 against his clients upon his records for services rendered by him in connection with this matter. He attempts to explain the same on the ground that he merely waived any charges in connection therewith only so far as the estate was concerned but not as against his clients. Shortly thereafter he entered a charge of $200 on his books for services rendered in opposing the allowance of fees to the removed executrix and her attorney.

Pending the removal of said executrix and on March 26, 1931, petitioner received from her the further sum of $2,835.50 on account of the judgment he had procured for his clients. On receipt of this sum petitioner for the first time advised his clients of the receipt of any money on their behalf and forwarded to each of his several clients a check for $200, retaining the balance pending the adjustment of the fees claimed by the executrix whose removal was then being sought. Within a short period of time petitioner had said executrix removed and himself substituted as administrator with the will annexed, whereupon he procured the confirmation of the probate court of the sale by him, as administrator, to his clients of certain assets of the estate for the sum of $6,350, which was offset against the judgment above mentioned. A charge of $250 was entered on his books for this service. Three days thereafter the removed executrix delivered to petitioner as administrator all other assets of the estate remaining in her hands. He received and expended certain other amounts and on May 22, 1931, forwarded to his clients an aggregate of $900. On October 10, 1931, the probate court confirmed the sale of certain real property in the estate to petitioner as "trustee" for his clients apparently to facilitate the realization of the amount due under the judgment. Here, again, petitioner entered a charge on his records against his clients of $200 for services in connection therewith. Along about this same time and up until June 20, 1933, he received certain other amounts, made certain expenditures, entered on his records several additional charges for services, aggregating the sum of $1359.34, and remitted to his clients $2,250.

During his employment, covering the period from August 1929, to October, 1933, petitioner received from all sources in excess of $12,000. The fees and costs charged and offset

by him against the collections aggregated in excess of $7,000 and but $4,950 was remitted to his clients. At no time during the four years of his employment did he render any report or account of his transactions — receipts or disbursements—until October, 1933, when required to do so upon request of an attorney employed by his (petitioner's) clients to procure such an accounting. The statement of account furnished by petitioner proved unsatisfactory, whereupon an action for an accounting was instituted against petitioner by his clients. It was subsequently stipulated therein that judgment should be entered against petitioner in the sum of $3,300 and costs, of which amount, according to the statement in respondent's brief, approximately $3,000 still remains unpaid.

Disciplinary proceedings were instituted against petitioner wherein, following several hearings, it was found that without the knowledge of his clients he had charged and collected fees in excess of those authorized by the contract of employment and had failed over a period of years to account for the amounts collected or disbursements made by him on behalf of his clients and that he had improperly appropriated a substantial portion of such collections to his own use in the guise of fees. By reason thereof he was found to have violated his oath and duties as an attorney and to have been guilty of conduct involving moral turpitude. Based on these findings, it has been recommended, as stated above, that he be disbarred from the practice of the law.

Petitioner admits that he had no agreement for compensation with any of his several clients other than the one above set forth. He urges, however, in attempted justification of his conduct, that his duties under the contract of employment were wholly performed when the judgment he procured for his clients had become final. In other words, he urges that under his contract of employment, as interpreted by him, he had earned and was entitled to collect his 25 per cent fee upon the procurement of the $18,827.25 judgment in favor of his clients and against the executrix of the estate of Henrietta Ferguson, which fee he contends he properly could, and thereafter did, discharge from the first moneys coming into his possession under said judgment. In support of this contention he went so far as to testify that in his opinion if only 25 per cent of the judgment had been realized he would have

been warranted in retaining the entire amount so collected, to the complete exclusion of his clients. Carrying his theory to its logical conclusion, he insists that the charges made by him in excess of 25 per cent were proper for the additional services performed on behalf of his clients in an effort to realize on the judgment he had procured for them.

■ The construction placed on the contract of employment by petitioner is unreasonable and strained. As appears from the contract above quoted, he was employed to take whatever legal steps were necessary "to collect" the interests of his several clients in the estates above mentioned, for which he was to be paid "25 per cent of the amount recovered", which fee was to be deducted "from the amount of recovery". As we read the contract, it can only be interpreted to warrant the retention by petitioner of 25 per cent of the amount collected by or realized for his clients. In view of petitioner's unwarranted overcharge of his clients and because of his failure to account to them over a period of several years, we are satisfied that disciplinary action is required in this case.

■ We find no merit in petitioner's contentions challenging the jurisdiction of the committee of The State Bar and of this court to hear and determine the charges filed against him. Nor do we perceive any error in permitting inquiry into possible antecedent disciplinary proceedings against an accused attorney. (*Marsh* v. *State Bar*, 2 Cal. (2d) 75, 80 [39 Pac. (2d) 403]; *McCue* v. *State Bar*, 4 Cal. (2d) 79 [47 Pac. (2d) 268].)

It is ordered that petitioner be disbarred from the practice of the law in all the courts of this state.

Curtis, J., Shenk, J., Langdon, J., and Thompson, J., concurred.

Rehearing denied.