[L. A. No. 23250.   In Bank.   June 24, 1955.]

NORMAN O. HOUGE, Respondent, v. PATRICK H. FORD, Appellant.

Patrick H. Ford, in pro. per., Macbeth & Ford and Moira D. Ford for Appellant.

Harry A. Daugherty and Lyman A. Garber for Respondent.

SPENCE, J.—Defendant Ford, an attorney, appeals from an adverse judgment in a declaratory relief action brought by plaintiff, his former client, for the purpose of settling con-

troverted claims relative to a contingent fee contract, which was followed by an assignment. The trial court construed the original contract in line with plaintiff's contention that defendant had failed to complete the agreed legal services; and upon that basis, it concluded that the contract and the assignment were of no further force and effect. Defendant maintains that the court erred in its construction of the parties' contract, and in its adjudication that the above-mentioned instruments were of no further force and effect. The record supports defendant's position.

Carl Hugo Johanson died in 1939. The residue of his estate—consisting primarily of stock in the Panama Glove Company, a corporation, and certain patents and contracts, relating thereto—was bequeathed in trust to his widow, his attorney Oscar Houge, and his "faithful employee" Helen Smith. The will directed the trustees to keep the income from the securities and the income "from patents and [related] contracts" in separate accounts. The income from the securities was to be paid 50 per cent to the testator's widow, 35 per cent to Miss Smith, and 15 per cent to one Weber, another employee, "as long as he continued to work for the Glove Company." The patent income was to be paid 50 per cent to the testator's widow, 20 per cent to Miss Smith, 5 per cent to Weber, and 25 per cent to the attorney Oscar Houge. Upon the death of the testator's widow, two-thirds of such portion of the income which she was entitled to receive under the trust was to be paid to the remaining beneficiaries in certain proportions.

The trust was to terminate on the death of both the testator's widow and Miss Smith. At that time the corpus was to be distributed, with one-third going to the testator's church. As to the remaining two-thirds of the corpus, the will provided for distribution as follows: To Oscar Houge during his lifetime an undivided 25 per cent in all the patents and contracts relating thereto in the trust estate; but if at the time of distribution of the trust estate, he should not be living, then said 25 per cent should go to "his son, Norman O. Houge (plaintiff herein), provided he is still engaged in devoting his time to the successful operation of the promotion of the sale and operation of the machinery and equipment and methods described in said patents"; and as to "all the rest, residue and remainder of the trust estate not specifically heretofore distributed," 21 per cent was to go to a named beneficiary and "the rest . . . to Norman O. Houge pro-

vided he is still engaged in working for the businesses of the trust estate and promoting its best interests.''

Plaintiff anticipated that he would be called into military service, and he voluntarily quit his employment in the trust's business. Then fearing that he might not secure reemployment there, plaintiff discussed with defendant the effect of such absence from the business on his interests under the will and the possibility of a forfeiture because of his failure to meet the employment condition. Defendant advised plaintiff that it would probably be necessary to take legal action to protect plaintiff's interest in the trust estate. Accordingly, the parties on February 6, 1941, entered into the following ''attorney and client'' contract: ''The undersigned client (plaintiff) hereby employs the undersigned attorney (defendant) to render legal service in connection with the following matter, to wit: Drawing contracts and taking other necessary legal steps to protect or collect legacy of client under estate of CARL HUGO JOHANSON now pending in L.A. Superior Court. As consideration the client agrees to pay said attorney a fee as follows: . . . Contingent: FORTY (40) percent of the amount recovered, preserved or protected by the legal services rendered. . . . Attorney is vested with authority to compromise and settle this matter, in his discretion, except that no settlement shall be made for less than $10,000.00.''

On February 18, 1941, nine days after the above contract was signed, the testator's widow, Mrs. Johanson, died. In March, 1941, plaintiff was drafted into the Army. Upon his discharge, he was refused further employment in the trust's business. In October, 1944, plaintiff's father, Oscar Houge, died. Oscar Houge had been the executor of the Johanson will, as well as a trustee and a life-income beneficiary of the trust estate. In 1946, the subsequently appointed administrator with the will annexed submitted a final account and petition for distribution in the Johanson estate, wherein attempt was made to eliminate plaintiff from taking any distributive share therein because of his failure to meet the condition of continuous employment in the trust's business. On plaintiff's behalf, defendant filed objections, and the issue of plaintiff's alleged forfeiture of his legacy went to a contested trial in 1947. While the trial court indicated from the bench an unfavorable ruling on plaintiff's claim, defendant was able ultimately to obtain a decision in plaintiff's favor upon the signing of the findings and conclusions.

The decree of distribution in the Johanson estate was entered in 1948, vesting plaintiff's interest in the trust free of the employment condition and giving plaintiff a twofold status: (1) as an income beneficiary of the trust; and (2) as a remainderman of the corpus of the trust, upon its termination. The Johanson will had not given plaintiff a share in the trust income, but apparently his claim thereto was successfully advanced by defendant following the death of Mrs. Johanson and Oscar Houge, two of the life-income beneficiaries, with plaintiff succeeding to the share of his deceased father as such income beneficiary. An appeal was taken from the 1948 decree by Helen Smith, the surviving trustee, and then dismissed. Thus in early 1950 the decree, establishing plaintiff's distributive rights in both the income and corpus of the trust estate, became final—nine years after the execution of the 1941 contract by plaintiff and defendant. The trust was then to continue, but to terminate upon the death of Helen Smith, the sole surviving trustee. On March 6, 1950, a stipulation leading to the closing of the Johanson estate was signed.

On this same last-mentioned date—March 6, 1950—plaintiff, at defendant's request, executed the following assignment: "For Value Received, pursuant to written contract dated February 6, 1941, the undersigned, Norman O. Houge, hereby assigns, sets over, and transfers to Patrick H. Ford, forty (40) percent of his right, title, and interest in and to the corpus and beneficial right in the trust created by the will of Carl Johanson (L.A. Superior Court, Probate No. 191032) of which Helen Smith is now the trustee." By virtue of this assignment, defendant has received to date approximately $1,000.

Sometime in 1951 plaintiff became dissatisfied with the sums distributed to him out of the patent income, and he attempted to persuade defendant to take some legal action to compel the trustee to increase the amount of income distributed to the beneficiaries of the trust. In particular, plaintiff assailed the trustee's failure to cause the Glove Company, which was controlled by the trust, to declare dividends, which, if issued, would have come into the trust estate. Accordingly, plaintiff urged defendant to seek an accounting from the trustee and, if necessary, to petition for her removal. Defendant advised against such action, contending that it would be unwise in that it would seriously diminish the small income then being produced by the trust if the trustee used trust income to

defend herself. Ultimately, in November, 1952, in discussing the matter with defendant, plaintiff cited their contractual arrangement and insisted that defendant was thereby obligated to initiate such further legal proceedings as plaintiff desired. Defendant, on the other hand, maintained that plaintiff's legacy was fully vested by the final decree of distribution, that their 1941 contract was thereby completely performed, and that he was under no further obligation to plaintiff. Plaintiff then brought this action for declaratory relief.

The principal point in controversy is the proper construction to be placed on the parties' contract for the purpose of determining their rights and obligations. Defendant contends that his services under the contract ended when the decree for distribution had become final and the Johanson estate had been distributed to the trustee; that the contingent fee arrangement entitled him to 40 per cent of everything plaintiff received by virtue of that final decree; and that the assignment merely confirmed the proportionate division of plaintiff's share in the trust estate, whether income or corpus. On the other hand, plaintiff contends that the contract imposed upon defendant a continuing duty, obligating him not only to exert every effort to secure a favorable decree of distribution, but also to take such further action during the entire existence of the trust as might appear necessary to plaintiff to obtain both income and corpus; and that the latter obligation would require defendant to institute legal proceedings based upon alleged illegal acts of the trustee, and for the purpose of obtaining further distribution of income.

Plaintiff relies upon section 1654 of the Civil Code, and contends that as defendant prepared the contract, any possible doubt as to its meaning should be resolved against defendant. That section, however, applies by its terms only "In cases of uncertainty not removed by the preceding rules . . ." (see 12 Cal.Jur.2d, § 149, p. 363, and cases cited); and in our opinion, the plain wording of the contract, when "explained by reference to the circumstances under which it was made, and the matter to which it relates" (Civ. Code, § 1647) leaves no doubt as to its meaning.

It will be recalled that defendant was employed by plaintiff to "protect or collect" plaintiff's legacy "under estate of CARL HUGO JOHANSON." Plaintiff's right to any legacy was doubtful because the terms of the Johanson will made such legacy contingent on plaintiff's continuous em-

ployment in the trust business, and plaintiff had already discontinued such employment with a view to entering the military service. Plaintiff obviously had in mind a possible settlement in cash, as he authorized defendant to settle for not less than $10,000. Under these circumstances, it is entirely clear that the parties had in mind that defendant's services might result either in (1) the possible protection of plaintiff's legacy by establishing his right thereto, free from the condition of continuous employment, in the final decree of distribution in the Johanson estate; or (2) the possible settlement in cash of his disputed claim; and that defendant's obligation to render legal services under the contract would be terminated at such time as he might accomplish either objective as set forth in the contract. Thus, the words "protect *or* collect" were obviously used advisedly and with reference to the two alternative possibilities; and there is no reason here for construing the word "or" in any way other than in its "ordinary and popular sense." (Civ. Code, § 1644.)

The cases cited by plaintiff to sustain his claim that the word "or" should be construed here as meaning "and" do not sustain his position. Resort to such unnatural construction of the word "or" is sanctioned only when such construction is found necessary to carry out the obvious intent of the Legislature in a statute or the obvious intent of the parties in a contract, when such intent may be gleaned from the context in which the word is used. (*Arnold* v. *Hopkins,* 203 Cal. 553, 563 [265 P. 223]; *Heidlebaugh* v. *Miller,* 126 Cal.App.2d 35, 38 [271 P.2d 557].) In its ordinary sense, the function of the word "or" is to mark an alternative such as "either this or that" (*Barker Bros., Inc.* v. *Los Angeles,* 10 Cal.2d 603, 606 [76 P.2d 97]; *People* v. *Smith, ante,* pp. 77, 79 [279 P.2d 33]); and such was the plain meaning of the word "or" as used by the parties here in the phrase "protect *or* collect."

It should be further recalled that at the time the 1941 contract was made, neither plaintiff nor defendant contemplated the possibility of the receipt by plaintiff of any income from the trust during the life of the trust. The Johanson will did not make plaintiff an income beneficiary, and plaintiff's whole concern was directed at the establishment of his right to a share of the corpus at the termination of the trust, which right was made contingent by the will upon plaintiff's continuous employment in the trust business. It was only after the deaths of Mrs. Johanson and of plaintiff's father,

who were two of the trustees and life income beneficiaries, that defendant succeeded in establishing not only plaintiff's claim to a share of the corpus at the termination of the trust, but, in addition, plaintiff's right to participate in the income of the trust during the life thereof by reason of the intervening death of plaintiff's father. And as plaintiff testified, it was only after the 1947 trial and following defendant's explanation, that plaintiff became aware that he might have a right to participate in the income during the life of the trust.

The object and meaning of the parties' contract must be determined by their intent at the time of its execution, and it cannot be extended beyond its plain import by circumstances which occurred after its execution, and which were not within their contemplation at the time of execution. Plaintiff testified that at the time of making the contract in 1941, he had no idea of instituting any action to force an accounting by the trustees or the removal of the trustees. Yet it is plaintiff's present claim that long after defendant had established plaintiff's rights by the final decree of distribution in 1950, defendant was still obligated to perform legal services by bringing an action, on plaintiff's demand, to force an accounting by, or the removal of, the trustee.

We are of the opinion that defendant's obligation under the contract to "protect" plaintiff's legacy was fully performed when he had taken the necessary steps to obtain a final decree of distribution establishing plaintiff's rights in the trust estate. Moreover, such was the view of the parties, for when the Johanson estate was closed in 1950, plaintiff executed an assignment transferring to defendant 40 per cent of all plaintiff's "right, title and interest" in plaintiff's legacy. This assignment declares on its face that it was executed pursuant to the 1941 contract. Defendant successfully performed legal services on plaintiff's behalf over a period of nine years, and the assignment recognized the validity of their contract for a 40 per cent contingent fee. No claim of fraud or undue influence is asserted in the making of the contract or the assignment. The only claim made by plaintiff is that there was a partial failure of consideration because of defendant's failure to perform further legal services, which we have held he was under no obligation to perform.

Plaintiff cites and relies upon *Dalzell* v. *State Bar*, 6 Cal. 2d 433 [57 P.2d 1300], but that case is clearly distinguishable. It involved a 25 per cent contingent fee contract to "collect"

an "undivided interest in the property of Florence Ferguson Shoemaker, according to the decree of distribution in her estate." (P. 434.) The attorney successfully brought an action and obtained judgment for approximately $18,000. In payment of the judgment, he received various sums totalling in excess of $12,000, of which he wrongfully retained in excess of $7,000, and remitted only $4,950 to his clients. He was disciplined because of his "unwarranted overcharge of his clients and because of his failure to account to them over a period of several years." (P. 438.) No comparable contract or circumstances are before us here.

From what has been said, it follows that the trial court erred in concluding that defendant had not completely performed his obligation under the 1941 contract when he had secured the favorable final decree of distribution establishing plaintiff's right to his legacy. The trial court further erred in declaring that the 1941 contract and the assignment made pursuant thereto were of no further force and effect.

The judgment is reversed, with directions to the trial court to enter judgment in favor of defendant Ford in accordance with the views herein expressed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Schauer, J., concurred.

Respondent's petition for a rehearing was denied July 20, 1955.